UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NOS. 06-069 & 06-206 (RMC) |
| | : |
| ROBERT M. CROMWELL, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following sentencing recommendation and reasons in support of such recommendation:

Facts

1.  On July 13, 2006, the defendant pleaded guilty to one count of Transporting or Shipping Material Involving Sexual Exploitation of Minors, in violation of 18 U.S. Code §§2252(a)(1) and (b)(1), and to one count of Possessing Material Constituting or Containing Child Pornography, in violation of 18 U.S. Code §2252(a)(4)(B).  The offenses occurred between on or about February 8, 2005, and September 29, 2005, while the defendant was living in the District of Columbia and in Maryland.

2.  Specifically, on February 8, 2005, from his residence in Washington, D.C., the defendant logged in to an America Online member-created chat room titled "yng23456789101112" and responded to a message stating "have videos to trade here IM or s2r", which message was posted by a Special Agent of the Federal Bureau of Investigation working in an undercover capacity to investigate individuals involved in the transmission and/or receipt of child pornography.  Mr. Cromwell sent an e-mail to the agent attaching a video file titled "meg_mindy r@ygold lolis

pose.mpg". The video file, approximately 55 seconds in length, depicts two prepubescent females naked and displaying their genitalia after exiting a hot tub. The undercover agent then sent the defendant an e-mail attaching a file that purposefully was corrupted to not allow it to be opened by the receiver.

      3.      The undercover agent initiated an instant message (IM) communication with the defendant in which the defendant stated that the files he had were of young girls between 10 to 14 years old, that he had lost his old files and that he was starting his collection over again. The defendant also stated that he was "sending 10 in a min..will take about 14 mins". Thereafter, the undercover agent received an e-mail from the defendant with an attached video file titled "(HUSSY~1". The video, approximately 1:16 minutes in length, depicts a prepubescent girl on a sofa following the instructions of an adult male (not on camera) to display and touch her genitalia. The undercover agent then sent the defendant an e-mail attaching another purposefully corrupted file.

      4.      The defendant subsequently engaged in three additional online conversations with the undercover agent in the same AOL chat room. During the third conversation on May 11, 2005, from his residence in Leonardtown, Maryland, the defendant stated that he had been away for a few months and upon his return, found that he had lost approximately 30 videos and a few thousand pictures. He also said that he was in the process of rebuilding his collection and that he currently had images of children from the age of four and up. The defendant subsequently sent the undercover agent two e-mails, each attaching three images depicting prepubescent females with their genitalia exposed. The undercover agent then sent the defendant an e-mail attaching a purposefully corrupted file. The defendant subsequently sent another e-mail with three attached images of prepubescent females with little to no clothing, two of which depicted exposed genitalia.

5.  On September 29, 2005, a search warrant was executed at the defendant's residence in Leonardtown, Maryland, during which his computer was seized and the defendant was interviewed. The defendant admitted trading child pornography online and saving child pornography images on his AOL account. The defendant further admitted using AOL to facilitate his online child pornography trading from his residences in D.C. and Maryland.

6.  A forensic examination of the defendant's computer showed that the defendant possessed, in his computer hard drive, well over 600 images and movie files of child pornography. The children portrayed in the pornographic images ranged in age from infants to teenagers. Many of those images were categorized in separate folders within the "My Pictures" folder. Some of these subfolders were titled "YESDADDY", "5+fk", "9yogirlwithcum", "yngn", "yngnon", "yngsex", and "pictures downloaded from AOL". A search warrant also was executed for the defendant's AOL account, and a forensic examination of that account showed that the defendant possessed additional child pornographic images and movies in the "sent" folder and in the "unread" folder.

7.  The child pornographic images and movies recovered from the defendant's computer and AOL account were reviewed by analysts at the National Center For Missing And Exploited Children (NCMEC) to determine if any of the images depict child victims already identified by law enforcement. The NCMEC analysis determined that 91 images and one movie file from 41 known series were of identified child victims. The two movies the defendant sent to the undercover agent on February 8, 2005, both depicted identified child victims.

8.  The defendant, through his counsel, timely notified the government of his intention to plead guilty, and thereby permitted the government to avoid preparing for trial and also permitted the government and the Court to allocate their resources efficiently.

Acceptance of Responsibility

9. In light of the foregoing recitation of the defendant's timely substantial assistance to the government in this investigation, the government requests that the defendant receive an additional one point adjustment for acceptance of responsibility pursuant to §3E1.1(b) of the Sentencing Guidelines.

Victim Impact Statements

10. Several of the identified child victims, or members of their families, have prepared victim impact statements describing the horror of their abuse and the continuing repercussions to them when images of their abuse are disseminated to others. To preserve the confidentiality of the victims and their families, the government will submit those statements under separate cover to the Court and defense counsel.

Sentencing Recommendation

11. The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), ruled that the Sentencing Guidelines are advisory rather than mandatory. However, the Court made clear that in determining the appropriate sentence for a defendant, federal courts still are required to calculate and consider the applicable Guidelines range, refer to the pertinent Sentencing Commission policy statements, and bear in mind the need to avoid unwarranted sentencing disparities and to provide restitution to victims. *Id.* at 259-60. Moreover, in determining an appropriate sentence for the defendant, federal courts also must continue to consider the need for the sentence imposed to accomplish the following sentencing objectives: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training

and medical care.  *Id.* at 260; *see also* 18 U.S.C. § 3553(a)(2).

12. Arguably, the applicable Sentencing Guidelines range is the most important factor the Court can consider in sentencing the defendant in this case because this range is calculated based upon the Sentencing Commission's careful consideration of all of the factors the Supreme Court and Congress have directed courts to consider in sentencing defendants.  The applicable Guidelines range in this case reflects an intensive objective analysis of sentences imposed on defendants similarly situated to defendant and is a critical tool to avoid unwarranted sentencing disparities.  According to the presentence report, the defendant has an adjusted offense level of 32 and a criminal history category of I, resulting in a Guidelines range of 121 to 151 months.  A sentence of at least 60 months imprisonment is mandatory by statute.

13. Turning specifically to the § 3553 factors, without question the defendant's conduct in repeatedly trading and viewing images of child pornography was depraved and perpetuated the horrific victimization of the children depicted in those images.[1]  As Congress recently found in enacting the Adam Walsh Child Protection and Safety Act of 2006, H.R. 4472, 109th Congress, 2nd Sess. §501(1)(A) (2006), "[t]he illegal production, transportation, distribution, receipt, advertising and possession of child pornography ... is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole."  Moreover, Congress recognized that "[e]very instance of viewing images of child

---

[1] The statements of the victims who have chosen to participate in the judicial process unquestionably provide heart-rending accounts of the horrors to which they were subjected and the continuing aftershocks of that abuse.  To more fully appreciate the victims' accounts, the government urges the Court to review prior to sentencing the results of the forensic examination in this case.  Those results are available on a computer disk that the government will provide at the Court's convenience.  The disk previously has been reviewed by defense counsel.

pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." *Id.* at §501(2)(D). A lengthy sentence of incarceration therefore is necessary and warranted in this case not only to punish the defendant for this extremely disturbing offense, but also to send a message to others that serious consequences will flow from such behavior and thus hopefully better protect children from these unspeakable abuses.

14. The government further notes that pursuant to the plea agreement in this case, the defendant will not be prosecuted in Maryland for his distribution of child pornography to the undercover agent in May 2005, a charge that carries a mandatory minimum sentence of five years imprisonment. The defendant thus already has benefitted substantially from his acceptance of responsibility in this case.

15. Balancing these factors, the government requests that the Court impose a sentence of 121 months imprisonment, which sentence is reasonable, appropriate and necessary to satisfy Congress's stated sentencing objectives.

                              Respectfully submitted,

                              JEFFREY A. TAYLOR
                              United States Attorney

By: _____
      ANGELA G. SCHMIDT
      Assistant United States Attorney
      Texas Bar No. 17764980
      Federal Major Crimes Section
      555 4th Street, N.W., 4th Floor
      Washington, D.C. 20530
      (202) 514-7273
      Angela. Schmidt@usdoj.gov