IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :

      V.                           :   CRIMINAL NUMBER 06-069 (RMC)

ROBERT M. CROMWELL    :

### DEFENDANT CROMWELL'S SENTENCING MEMORANDUM

Robert Cromwell, by his attorney, W. Gregory Spencer, Chief Assistant Federal Public Defender, hereby submits the following memorandum in aid of sentencing in this matter.

### I.  PROCEDURAL HISTORY

On March 15, 2006, Robert Cromwell was charged in the above captioned three count indictment. Counts One and Two charge Mr. Cromwell with Transporting or Shipping Material Involving Sexual Exploitation of Minors, in violation of 18 U.S.C.§§ 2252(a)(1), (b)(1) and 2256. Count Three charges Possessing Material Constituting or Containing Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) and 2256. On June 29, 2006, a one count information was filed in the United States District Court for the District of Maryland charging Mr. Cromwell with Possessing Material Constituting or Containing Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B).

Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, the information from United States District Court for the District of Maryland was transferred to the United States District Court for the District of Columbia. On July 13, 2006, Mr. Cromwell plead guilty to

Count Two of the above captioned indictment and to Count One of the aforementioned information. In admitting his guilt, Mr. Cromwell agreed that the information contained in the factual proffer in support of the guilty plea was correct. Presently, Mr. Cromwell is scheduled to be sentenced on November 3, 2006.

## II.    APPROPRIATE DISPOSITION

### A.    THE POST BOOKER SENTENCING FRAMEWORK

On January 12, 2005, the Supreme Court decided the cases of United States v. Booker and United States v. Fanfan, 125 S.Ct. 738 (2005), two long awaited decisions concerning the Federal Sentencing Guidelines. The Court held that its ruling in Blakely v. Washington, 124 S.Ct. 2531 (2004), was applicable to the Federal Sentencing Guidelines and that the Sixth Amendment prohibited any enhancement under the Guidelines based upon a fact that was not found beyond a reasonable doubt by a jury or agreed to by the defendant. To cure the constitutional deficiencies inherent in the Sentencing Guidelines, the Court excised 18 U.S.C. § 3553(b)(1) which was the part of the Sentencing Reform Act that made the Guidelines mandatory. "So modified, the . . . Sentencing Reform Act of 1984 . . . makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004)." Booker at 757. Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." Id. at 767. While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held

that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Thus, pursuant to <u>Booker</u>, courts must treat the Guidelines as but one, among several, sentencing factors.

As a result of <u>Booker</u>, sentencing in federal cases is now governed by 18 U.S.C. § 3553(a). Section 3553(a) requires the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth below. Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> © to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and any pertinent policy statements of the Sentencing Commission. Therefore, taken together, the directives of <u>Booker</u>, as well as Section 3553(a), make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553(a), courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**B.    FACTORS SUBMITTED IN MITIGATION OF SENTENCE**

Robert Cromwell understands and appreciates that this Court could sentence him to incarceration for up to thirty years and/or impose a fine up to $ 500, 000.00. In addition, Mr. Cromwell acknowledges that pursuant to 18 U.S.C. § 2252(b)(1) the Court must sentence him to at least five years of prison. The Sentencing Guideline range calculated in this case is 121 to 151 months. However, because under Booker the courts must treat the guidelines as just one of a number of sentencing factors, it is submitted that the purposes of sentencing, as set forth in 18 U.S.C. §3553(a)(2), do not require the imprisonment of Mr. Cromwell for the above indicated period of time.

Robert Cromwell is forty-seven years old. Although he was born in Spain, while his father was on assignment with the Air Force, Mr. Cromwell has live most of his life in Leonardtown, Maryland. His parents separated in 1963, and, although Mr. Cromwell spent some time with his father in Colorado, he and his sister were raised principally by their mother in the Leonardtown area.

After graduating from high school in 1977, Mr. Cromwell enrolled in a program with the Department of Defense which permitted him to work full time and attend night school. After one year, Mr. Cromwell left the program and spent two years in Colorado working for his father. Since returning to the Leonardtown area from Colorado, Mr. Cromwell has been gainfully employed all his adult life. Most notably, Mr. Cromwell was employed by Rite Aid Pharmacy from 1996 to 2004. During the last years of his employment with Rite Aid, Mr. Cromwell was a store manager. For a brief period of time (October 2004 to July 2005), Mr. Cromwell was unemployed. In July 2005, Mr. Cromwell began to work for the True Value Store in Leonardtown, Maryland, as a shift manager. Mr. Cromwell was arrested for these offenses on

March 18, 2006. Even though Mr. Cromwell's employer was aware of his arrest for these offenses, he permitted Mr. Cromwell to remain with the store because he was a dedicated employee and a "valuable asset to our company." (See attached letter from Albert Rudman) After Mr. Cromwell's guilty plea was reported in a local newspaper in August 2006, he was asked to resign his position with the store. Since that time, Mr. Cromwell has been seeking new employment, however, he has not had any success.

    Since February 25, 1983, Mr. Cromwell has been married to Ella Fay Cromwell, a lifelong friend from the Leonardtown area. They have two daughters, Terri Lynn Cromwell, age 20, and Mandi Leigh Cromwell, age 18. Mr. Cromwell and Mrs. Cromwell were separated from 2003 until July 2006. During that period of time, Mrs. Cromwell remained in Leonardtown, and Mr. Cromwell moved to Washington, D.C., because he was the manager of a Rite Aid in town. During the time of their separation, Mr. Cromwell maintained contact with his daughters. It was during this period of separation that Mr. Cromwell became involved in the present offenses. After losing his position with Rite Aid, Mr. Cromwell eventually returned to Leonardtown and resided with his sister. Since his arrest in this case, Mr. Cromwell and Mrs. Cromwell have reconciled and he returned to their home in July 2006. Presently, they and their daughter, Mandi, reside together in the family home.

    Following his guilty plea in this case, Mr. Cromwell submitted to an evaluation by Carole T. Giunta, Ph.D, a clinical and forensic psychologist.[1] In summary, among other factors, Dr. Giunta believes that Mr. Cromwell's conduct in this case occurred during a period of time when

---

[1] Due to the personal information contained in Dr. Giunta's report, it is being submitted to the Court under separate cover.

he was extremely depressed and isolated. Also, Dr. Giunta believes that Mr. Cromwell is a low risk of re-offending and that he is a good candidate for psychotherapy.

Finally, on September 29, 2005, while Mr. Cromwell was living in Leonardtown with his sister, the FBI agents investigating this case executed a search warrant on his sisters home and seized his computer. At that time, after waiving his *Miranda* rights, Mr. Cromwell gave a complete written confession admitting his conduct in this case. Mr. Cromwell was not arrested for these offenses until March 18, 2006, approximately six months after he had confessed to the FBI. During that six month period of time, Mr. Cromwell continued to reside at his sister's home and maintained the same employment. He never attempted to flee or to otherwise avoid his prosecution in this case. Prior to his arrest in this case, Mr. Cromwell had never been arrested before. Since his release following his arrest, he has been in complete compliance with his conditions of release. Thus, since being notified of this investigation in September 2005 and admitting his involvement at that time, his conduct indicates that he is completely remorseful and prepared to accept his punishment for these offenses.

### III.    CONCLUSION

In the post-<u>Booker</u> era, courts must look to a combination of factors to determine whether incarceration is appropriate and, if so, what the appropriate term of incarceration should be in each case. In sentencing those defendants that appear before them, courts must consider all the purposes behind sentencing, as outlined in 18 U.S.C. § 3553 (a).

As previously discussed, this is Mr. Cromwell's first offense in an otherwise law-abiding life. Since his conviction in this case, Mr. Cromwell has lost his job, as well as the respect of many co-workers, family and friends. Thus, the nature and characteristics of Mr. Cromwell's

background and the purposes of the sentencing process support a sentence other than imprisonment for the period suggested by the Guidelines. The effect of this conviction and along with a lengthy sentence of imprisonment upon an individual that had been a law-abiding citizen will be devastating. Mr. Cromwell's loss of self-respect and the loss of his standing in his community has been very traumatic. It is submitted that under the circumstances of Mr. Cromwell's case, a sentence to the mandatory minimum of five years would be sufficient to advance each interest set forth in Section 3553 (a). Therefore, the defense requests that the Court accept the aforementioned information and arguments in mitigation of sentence and, respectfully, requests that the Court impose a sentence below that suggested by the Sentencing Guidelines upon Mr. Cromwell.

        Respectfully submitted,

        A.J. KRAMER
        FEDERAL PUBLIC DEFENDER

        "/s/"
        W. GREGORY SPENCER
        Chief Assistant Federal Public Defender
        625 Indiana Avenue, N.W., Suite 550
        Washington, D.C. 20004
        (202) 208-7500